**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MARCUS D. CRAIG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **Case No. 26-cv-858-DWD** |
| **ILL. DEPT. OF CORR.,** | ) | |
| **ROBINSON CORR. CTR.,** | ) | |
| **LATOYA HUGHES,** | ) | |
| **CHAD JENNINGS,** | ) | |
| **P. MARTIN,** | ) | |
| **DR. THOMAS,** | ) | |
| **MS. NORD,** | ) | |
| **LT. BANTICAN,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marcus D. Craig, an inmate of the Illinois Department of Corrections (IDOC)[1], brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights during a previous stint of incarceration at Robinson Correctional Center (Robinson) from September 13, 2023-November 22, 2024. (Doc. 1). Although Plaintiff is represented by counsel, he is currently incarcerated, so his complaint is still subject to review under Section 1915A. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon

---

[1] At the time of filing, it was not clear if Plaintiff was incarcerated. The Court directed Plaintiff's counsel to clarify if he was incarcerated when the complaint was filed and counsel indicated that Plaintiff was reincarcerated on June 12, 2026, four days before this complaint was filed. (Doc. 10 at 1). The IDOC inmate locator indicates that Plaintiff is currently detained at Hill Correctional Center.

which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

Plaintiff alleges that he is 100% deaf in his left ear and 70-80% deaf in his right ear. (Doc. 1 at 4). He claims that without hearing aids or assistive devices, he cannot hear things like verbal instructions from staff or announcements about meals, programs, appointments, and more. In February of 2023 at Western Correctional Center, an audiologist prescribed new hearing aids and promised to deliver them in September of 2023. Weeks before the hearing aids arrived, Plaintiff was transferred to Robinson, arriving on September 13, 2023. He informed Robinson staff that they should call Western about his new hearing aids, and he alleges that Robinson also received his complete medical records from Western and thus had constructive and actual notice of his disability and the needed care. (*Id.*).

Shortly after arriving at Robinson, Plaintiff received a vibrating pager watch, meant to alert inmates who are hard of hearing to things like meals, and institutional calls. (*Id.* at 5). The pager was synced with Plaintiff's initial housing unit, Unit 1, but in November of 2023 he was moved to Unit 5 and the pager was never re-synced, rendering it useless. Plaintiff notified prison officials that the watch needed to be re-synced. In mid-July of 2024, Defendant P. Martin indicated in a grievance response that the watch would be re-synced "this week," but that never occurred.

Plaintiff was not designated as Hard of Hearing "HOH" in the prison's computer system, meaning that officers were never formally notified of Plaintiff's needs. Plaintiff

alleges that officers repeatedly demanded compliance with verbal instructions he could not hear, and threatened discipline if he did not comply. Plaintiff also lacked a physical badge to communicate his HOH status to staff or fellow inmates. (*Id.* at 5-6). Plaintiff attempted to display his HOH status by wearing his standard IDOC identification backwards to reveal the small HOH notation on the back, but he was disciplined for wearing the badge backwards. (*Id.* at 6).

Plaintiff alleges that Defendant Martin's job was to serve as the ADA Coordinator and Healthcare Unit Administrator at Robinson, roles that required him to ensure that inmates had needed accommodation. Martin did not engage with Plaintiff about his needs until April or May of 2024, and when Martin did engage with Plaintiff he was dismissive of Plaintiff's needs and took no meaningful action. (*Id.* at 6).

Plaintiff alleges that throughout his time at Robinson he submitted countless grievances, sick call requests, and individual in custody request slips, which all provided "documented notice to all Defendants" of his disability and need for accommodations. (*Id.* at 6). Plaintiff alleges he wrote and spoke with Defendant Jennings on multiple occasions, wrote and spoke with Defendant Ms. Nord, and spoke with Dr. Thomas in May of 2024, all to no avail. (*Id.*). Plaintiff complains that without hearing accommodations he was not allowed to participate in educational programming, he missed meals, yard time, commissary, health care sick call, and law library because he was not alerted to when things happened. (*Id.* at 7).

Plaintiff alleges that Defendant Bantican was hostile towards him on several occasions, referring to Plaintiff as a deaf guy, and telling other inmates that Plaintiff

exaggerated his condition. (*Id.*). Plaintiff claims that Bantican threatened him with discipline for failing to obey orders, despite knowingly or recklessly ignoring that Plaintiff could not hear the orders. (*Id.* at 7-8). Plaintiff complains that Bantican's conduct and the overall lack of accommodation at the prison made it a dangerous environment for him and led to avoidable conflicts. (*Id.*).

At some point in 2024 Plaintiff had a hearing test at Robinson that confirmed his need for hearing aids. (*Id.* at 8). Plaintiff did not receive hearing aids until September of 2024, two months before his release from custody. Plaintiff alleges that Defendant Wexford systemically delayed his access to care by requiring inmates to use a multi-tier sick call process, that had to be restarted if it did not produce results. (*Id.*). He alleges he experienced a months-long delay in accommodation due to the three tier process. Plaintiff further alleges that Wexford systemically failed to provide an audiologist at Robinson, which caused him to go without hearing aids for twelve months. (*Id.* at 8-9).

Plaintiff's complaint is divided into 5 enumerated claims, which the Court adopts as follows:

Claim 1: Eighth Amendment deliberate indifference against Defendants Jennings, Martin, Dr. Thomas, Ms. Nord, and Wexford for knowing of Plaintiff's serious medical needs and failing to arrange care;

Claim 2: ADA claim against Defendants IDOC, Robinson, and Hughes for failing to accommodate Plaintiff's hearing needs;

Claim 3: RA claim against Defendants IDOC and Robinson for excluding Plaintiff from participation in activities and services;

Claim 4: Retaliation/ADA adverse action claim against Defendant Bantican for disciplining Plaintiff for incorrectly displaying his HOH identification card and otherwise disciplining or threatening Plaintiff despite his limitations;

Claim 5: IIED claim against Defendant Bantican.

(Doc. 1 at 9-16).

**Analysis**

To survive preliminary review under Section 1915A, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and which includes "enough facts to state a claim to relief that is plausible on its face." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Plaintiff is required to associate specific defendants with specific claims so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *Id.* at 555. Further, because Plaintiff brings his claims under Section 1983, he must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Furthermore, a generic assertion that one or more defendants engaged in constitutional violations is not adequately specific. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).

In Claim 1, Plaintiff faults Defendants Jennings, Martin, Ms. Nord, Wexford, and Dr. Thomas for exhibiting deliberate indifference to his serious medical needs by knowing of his deafness and failing to act. He alleges they were informed of his situation via grievances, sick call slips, inmate requests and conversations, but he gives very little information about the frequency or level of detail in his communications. Starting with Jennings, generally a letter-writing campaign or passing conversation is not enough to hold a high-level prison administrator responsible for deliberate indifference. *See e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the mere mishandling of a grievance by someone who did not cause or participate in the underlying harm is insufficient to state a claim); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (not every prison official who knows about a prisoner's problem can be held personally liable for failing to act, and a letter-writing campaign does not create automatic liability). The Seventh Circuit has acknowledged that an inmate may have a claim for personal responsibility against a prison administrator who is informed multiple times via highly detailed correspondence of a serious problem but fails to exercise their authority to investigate or remediate an issue. *See e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (finding an inmate's claims sufficient to proceed against grievance officials where he transmitted multiple coherent highly detailed grievances and other correspondence, but officials either turned a blind eye or approved of the underlying conduct). Here, Plaintiff insinuates that he is seeking *Perez* style liability against Jennings, but he does not clearly say how often he interacted with Jennings or what his many pleas for assistance conveyed. Without more detail, the Court is not yet persuaded that Plaintiff has a plausible claim alleging Jennings

personally caused him harm. The same goes for Defendant Ms. Nord, because Plaintiff does not give any additional detail about the frequency or contents of contact with Ms. Nord. The bare assertion that Plaintiff frequently conveyed his needs to the prison and thus notice was attributable to all individual defendants (Doc. 1 at ¶¶ 40-41) is simply not sufficient to hold any defendant personally liable because it does not make it clear that any particular defendant turned a blind eye or failed to act.

By contrast, Plaintiff may proceed against Defendant Martin because he alleges Martin engaged at least twice with his communications and attempts to secure care, but took no meaningful remedial action. Specifically, Plaintiff alleges that Martin wrote on a grievance that Plaintiff's watch would be re-synced in July of 2024, but that never happened. Additionally, he alleges that about 7 or 8 months into his stay at Robinson, Martin engaged with him in some fashion but brushed off his concerns and offered no assistance. These assertions are sufficient at this early juncture to proceed on Claim 1 against Martin in his individual capacity.

Next, the Court considers if Plaintiff has stated an adequate claim against Dr. Thomas, whom Plaintiff allegedly saw for a single appointment in May of 2024. Single appointments with prison medical providers very rarely provide a strong basis for a deliberate indifference claim because it is too difficult to assess if the providers response to a given problem may constitute deliberate indifference or just plain negligence. In the present complaint, Plaintiff provides very scarce information about his interaction with Dr. Thomas, plainly alleging that Thomas had authority to prescribe hearing aids and surmising that his failure to do so constitutes deliberate indifference. These allegations

are too threadbare. There is no indication about why Plaintiff had a visit with Dr. Thomas, what he conveyed at the visit, or how Dr. Thomas responded. Additionally, it is noteworthy that at some point in 2024, Plaintiff received a hearing test, and then eventually received hearing aids in September of 2024. It is certainly possible that these two things may have occurred *because of* the interaction Plaintiff had with Dr. Thomas in May of 2024. On the information pled, Claim 1 against Dr. Thomas cannot be sustained.

Finally, Plaintiff alleges that Wexford's policy, custom, or practice of requiring inmates to use a three-tier sick call process significantly delayed his care. He also alleges that Wexford harmed him by failing to staff an audiologist at Robinson. Under controlling precedent, Wexford may be held liable for a constitutional harm caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *See e.g.*, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). "In applying *Monell* and avoiding *respondeat superior* liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Id.* at 654. Plaintiff has identified a policy—the sick call policy—but he does not give any detail about how the policy actually worked to delay his own care. Did he go through the three steps multiple times to no avail, was he told that the three-tiered process was delaying his care, does this problem spread beyond his own personal experience? Facts of this nature are necessary to plead a plausible *Monell* claim against Wexford. Additionally, it is not clear if the lack of an audiologist is a policy, a widespread practice, or a decision by a policymaking official. A *Monell* claim is not

adequately pled by merely alleging a certain condition existed at a prison and linking that to Wexford's name. As such, Claim 1 may not proceed against Wexford as pled.

In Claim 2, Plaintiff faults IDOC, Robinson Correctional Center, and Latoya Hughes for harming him under the ADA, and in Claim 3 he makes comparable allegations against IDOC and Hughes under the RA. Under the ADA and RA, a Plaintiff must allege that he is a qualified individual with a disability, who was denied the benefits of the services, programs, or activities at the prison, by reason of his disability. 42 U.S.C. § 12132; 29 U.S.C. § 794(a). The ADA and RA also require a prison to reasonably modify its policies or practices to avoid discrimination based on disability. 28 C.F.R § 35.130(b)(7); 28 C.F.R. §41.53. Practically speaking, the two statutes are the same for purposes of initial review. *See e.g.*, *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022). The Seventh Circuit has recognized that disability discrimination under the RA and the ADA can be "established in three different ways: '(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people.'" *A.H. by Holzmueller v. Ill. High School Assoc.*, 881 F.3d 587, 592-93 (7th Cir. 2018). The proper defendant for an ADA or RA claim is the Department of Corrections or the Director. *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 670 n.2 (7th Cir. 2012) (the department or the director of the department are appropriate defendants for ADA/RA claims). An inmate seeking money damages under the ADA or RA must also establish that the entity acted with deliberate indifference to his situation. *See e.g.*, *Shaw v. Kemper*, 52 F.4th 331, 334 (7th Cir. 2022) (to recover money damages, plaintiff must identify intentional misconduct, and not mere

negligence, by a named defendant); *Bernard v. Ill. Dept. of Corr.*, 2023 WL 2018915 at *7 (N.D. Ill. Feb. 15, 2023) (in the ADA and RA contexts, courts evaluate knowledge and deliberate indifference attributable to the prison entity).

As an initial matter, Robinson Correctional Center is not an appropriate defendant for a claim under the ADA or RA, so this defendant will be dismissed with prejudice. The proper defendant for the ADA/RA claims is either IDOC or Hughes. Plaintiff is no longer incarcerated at Robinson, and he does not seek any form of injunctive or declaratory relief, he only seeks monetary damages. The Seventh Circuit has suggested that where an inmate seeks only money damages for an ADA or RA violation, the ADA claim may be dismissed in favor of the RA claim because the RA does not present problems of sovereign immunity. *See e.g.*, *Jaros v. Ill. Dept. of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012); *see also* *Hooten v. Indiana Dept. of Corr.*, 2026 WL 2823288 at * 2 (N.D. Ind. Sept. 21, 2026) (dismissing an inmates claim for money damages under the ADA as unavailable, but allowing his RA claim to proceed for damages against the commissioner of the department of corrections). Here, the Court finds it appropriate to dismiss Claim 2 under the ADA, in favor of allowing Claim 3 to proceed against Defendant Hughes in her official capacity. The Court will also dismiss IDOC as redundant to Hughes.

Claims 4-6 turn on the alleged conduct of Defendant Bantican for retaliating against or taking adverse actions against Plaintiff. Plaintiff alleges Bantican acted in a retaliatory fashion, but he does not identify any instances of protected speech that he alleges Bantican specifically used as a basis for retaliatory action. Identifying protected speech is one of the fundamental tenants of a First Amendment retaliation claim, so

without more specificity Plaintiff cannot proceed. Plaintiff also charges Bantican with either threatening to discipline him, or for actually improperly disciplining him, but he says nothing specific about when this happened or what the disciplinary outcome was. The mere mention that discipline was threatened or may have occurred, without more, is insufficient. At best, it seems that Plaintiff is faulting Bantican for harassing banter, but most verbal harassment is not actionable under § 1983. *Compare* *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the harasser and fellow inmates, was sufficient to proceed beyond initial review) *with* *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The test for what constitutes cruel and unusual punishment is an objective one. It is not the actual fear of the victim, but what a "reasonable victim" would fear." *Id.* The Court is not persuaded that Plaintiff's allegations against Bantican rise to the level of cruel and unusual punishment, and it finds Claim 4 inadequately pled.

Even if Claim 4 contained allegations sufficient to proceed beyond initial review, there is good reason to question if it is properly joined in this single lawsuit. At this juncture, there is a surviving claim against Administrator Martin regarding his alleged personal deliberate indifference to Plaintiff's need for accommodation, and there is an RA claim against Defendant Hughes in her official capacity for failing to accommodate

Plaintiff's serious medical needs. The allegations against Bantican, a correctional officer, are dissimilar in substantive character, and appear to have nothing more than temporal overlap with Claims 1 and 3. Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence, or series of transactions or occurrences and presents a question of law or fact common to all. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rule of Civil Procedure 18 provides that a party may assert as many claims as they have against a single party. Alternatively, a plaintiff may join multiple claims against defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences, or if there is a question of law or fact that will be common to all defendants. Fed. R. Civ. P. 20. To remedy problems with misjoinder, a court may add or drop a party, or it may sever claims from a lawsuit. Fed. R. Civ. P. 21. The Seventh Circuit has cautioned that courts should guard against "scattershot" pleading strategies, and that they should "target for dismissal 'omnibus' complaints—often brought by repeat players—that raise claims about unrelated conduct against unrelated defendants." *Mitchell v. Kallas*, 895 F.3d 492, 503 (7th Cir. 2018). The Seventh Circuit has even instructed that complaints wrought with joinder problems may be immediately stricken. *See e.g.*, *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) (when faced with misjoined claims, a court may strike a pleading and give leave to amend). Here, the Court questions whether the claims against Bantican are properly joined in this case.

Given that the Court already determined that Claim 4 against Bantican is insufficient to state a claim, it will dismiss the claim without prejudice. Claims 5 and 6 against Bantican rely on state law, and the Court will decline to exercise supplemental jurisdiction in light of the dismissal of Claim 4.

**Disposition**

In sum, Plaintiff may proceed on Claim 1 against Defendant Martin in his individual capacity, and he may proceed on Claim 3 under the RA against Defendant Hughes in her official capacity. All other claims against all other Defendants are dismissed as insufficiently pled. The Clerk of Court shall **TERMINATE** Defendants Illinois Department of Corrections, Robinson Correctional Center, Chad Jennings, Wexford Health Sources, Inc., Dr. Thomas, Ms. Nord, and Lt. Bantican for Plaintiff's failure to state a claim.

Counsel shall now be responsible for seeking summons from the Clerk's Office and for conducting service on Defendants Martin and Hughes.

**IT IS SO ORDERED.**

Dated: October 20, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.10.20 10:03:47 -05'00'

DAVID W. DUGAN
United States District Judge